# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN FASSNACHT<br>128 N 4th St.<br>Reading, PA 19601<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>HOME DEPOT U.S.A., INC.<br>8500 Willard Dr.<br>Breinigsville, PA 18031<br><br>　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO.: 21-0269<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CIVIL ACTION COMPLAINT

Plaintiff, Justin Fassnacht (*hereinafter* referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### I. Introduction

1.　Plaintiff has initiated this action to redress violations by Home Depot U.S.A., Inc. (*hereinafter* referred to as "Defendant") of the Pennsylvania Medical Marijuana Act ("MMA"), 35 Pa. C.S.A. § 10231.101, *et seq*. As a direct consequence of Defendant's unlawful actions, Plaintiff suffered damages more fully described/sought herein.

### II. Venue

2.　Venue was properly laid in the County of Lehigh pursuant to Rule 1006(a) of the Pennsylvania Rules of Civil Procedure because the transactions and occurrences from which the instant action arises occurred in that county, and Plaintiff worked for Defendant as an employee at its Breinigsville, PA location. Defendant subsequently removed this matter to this Court via Notice of Removal, filed on January 20, 2021.

### III.  Parties

3. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

4. Plaintiff is an adult who has resided at and worked from the above-captioned address at all relevant times herein.

5. Defendant is a large home improvement retailer with various retail stores and distribution centers located throughout the United States, including the distribution center that Plaintiff was physically employed at in Breinigsville, PA (as identified in the above-captioned address).

6. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV.  Factual Background

7. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

8. Plaintiff was hired to work for Defendant's distribution center in Breinigsville, Pennsylvania on or about September 12, 2020.

9. At all times during his employment with Defendant, Plaintiff was employed in Defendant's outbound department as a "wall builder."

10. Plaintiff's job duties while employed with Defendant consisted of using a hand-held RF scanner to scan product within the warehouse as well as placing the scanned product in a cart and then loading it onto a truck.

11. At no point in time during his employment with Defendant was Plaintiff required to drive or operate heavy machinery or work with chemicals.

12. Plaintiff has and continues to suffer from serious medical conditions, including but not limited to fibromyalgia.

13. Fibromyalgia is considered a "serious health condition" under Pennsylvania's MMA. *See* 35 Pa. C.S.A. 10231.103.

14. On or about October 1, 2020, Plaintiff was certified as a qualifying "patient" under the MMA and issued a medical marijuana identification card. *See* 35 Pa. C.S.A. § 10231.501.

15. On or about November 15, 2020, Plaintiff accidentally dropped his RF scanner while performing work for Defendant and as a result, the screen cracked.

16. Plaintiff reported this incident to his Supervisor, Craig Ulman (hereinafter "Ulman"), who did not appear to be concerned about the cracked RF scanner and proceeded to provide Plaintiff with another scanner so he could continue to work for the remainder of the day.

17. Approximately one half hour after Plaintiff apprised Ulman of the cracked RF scanner, Plaintiff was told by Respondent's management that he had to report to the office and undergo a drug test.

18. When Plaintiff was informed that he would be required to undergo a drug test, he disclosed to Ulman and Ulman's supervisor, Haste (last name unknown – "Haste"), that he would likely not pass the aforesaid drug test because he is a medical marijuana card holder and uses medical marijuana at night to help with the pain associated with his fibromyalgia.

19. Following Plaintiff's conversation with Haste wherein he disclosed that he was a medical marijuana card holder, Haste asked that Plaintiff show her a copy of his card. Plaintiff complied with Haste's request and Haste thereafter proceeded to make a photocopy of Plaintiff's medical marijuana card.

20. Plaintiff underwent the required drug test and was told that the results of the drug test would come back within 3-5 days.

21. While waiting for the results of his drug test, Defendant allowed Plaintiff to continue working within his same position in the outbound department despite having knowledge that Plaintiff was a medical marijuana card holder and used medical marijuana at night for his fibromyalgia.

22. Not only did Defendant continue to allow Plaintiff to work while awaiting his aforesaid drug test results, but they also allowed him to train another individual during this timeframe.

23. Plaintiff was eventually contacted by the lab that conducted the drug test and was told that he had tested positive for THC, to which Plaintiff responded by stating that he was a medical marijuana card holder. Plaintiff was thereafter asked to produce a copy of his medical marijuana card to the lab, which he did.

24. On or about November 22, 2020, Plaintiff was asked to report to the office for a meeting with Ulman and Haste.

25. During his November 22, 2020 meeting with Ulman and Haste, Plaintiff was informed that he was being terminated from Defendant.

26. The reason provided for Plaintiff's termination on November 22, 2020 was "we don't accept medical marijuana."

27. Pursuant to 35 Pa. C.S.A. § 10231.2103(b)(1), "No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee . . . solely on the basis of such employee's status as an individual who is certified to use medical marijuana."

28. By terminating Plaintiff due to his status as a qualified "patient" under the MMA, Defendant has violated the law pursuant to 35 Pa. C.S.A. § 10231.2103(b)(1).

4

## Count I
### Violations of the Pennsylvania Medical Marijuana Act ("MMA")
### 35 Pa. C.S.A. § 10231.101, et seq.
**(Wrongful Termination)**

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff has and continues to suffer from "serious medical conditions" within the meaning of the Pennsylvania MMA.

31. Plaintiff is a qualifying "patient" within the meaning of 35 Pa. C.S.A. § 10231.103.

32. Defendant is an "employer" within the meaning of 35 Pa. C.S.A. § 10231.2103(b).

33. Approximately two months into his employment with Defendant, Plaintiff was required to undergo a drug test.

34. Plaintiff informed Defendant's management he was likely going to fail the aforesaid drug test due to his use of prescribed medical marijuana at night for his fibromyalgia.

35. Plaintiff further informed Defendant's management that he was certified as a qualifying "patient" under the MMA and was issued a medical marijuana identification card.

36. Despite knowing this information and allowing Plaintiff to work for several days while his drug test results were pending, Defendant's management ultimately terminated Plaintiff's employment, claiming that they "do not accept medical marijuana."

37. Pursuant to 35 Pa. C.S.A. § 10231.2103(b)(1), "No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee . . . solely on the basis of such employee's status as an individual who is certified to use medical marijuana."[1]

38. By terminating Plaintiff because he is a qualified "patient" under the MMA, Defendant has violated the law pursuant to 35 Pa. C.S.A. § 10231.2103(b)(1).

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting retaliation;

B. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or customs in violation of Pennsylvania law;

C. Defendant is to compensate, reimburse, and make Plaintiff whole for any and all pay and benefits he would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, and seniority.

D. Plaintiff should be awarded punitive damages, as applicable under the laws which he is suing, in an amount believed to be appropriate to deter such conduct by Defendant in the future; and

---

[1] Several courts have found an **implied** private right of action for violations of a state medical marijuana act that does not explicitly provide for a private right of action where the plaintiff is a qualifying patient under the act, there is no indication of legislative intent to deny a private cause of action, and the private cause of action is not inconsistent with the underlying legislative purposes of the act. *See Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, No. 20-01621, 2020 U.S. Dist. LEXIS 176198, at *15 (E.D. Pa. Sep. 25, 2020); *Palmiter v. Commonwealth Health Sys., Inc.*, No. 19 CV 1315, 2019 WL 7372712, at *10-15 (Pa. Ct. Com. Pl. Nov. 22, 2019); *Noffsinger v. SSC Niantic Operating Co.*, 273 F. Supp. 3d 326, 340-41 (D. Conn. 2017) (holding legislature intended a private cause of action under Connecticut's Palliative Use of Marijuana Act); *see also Whitmire v. Wal-Mart Stores Inc.*, 359 F. Supp. 3d 761, 781-82 (D. Ariz. 2019) (following *Noffsinger* to hold there is an implied private cause of action for violations of the Arizona Medical Marijuana Act); *Chance v. Kraft Heiz Foods Co.*, 2018 Del. Super. LEXIS 1773, *9-18 (Del. Super. Ct. 2018) (same regarding Delaware's Medical Marijuana Act); *Callaghan v. Fabrics Corp.*, 2017 WL 2321181, at *4-8 (R.I. Super. Ct. 2017) (same regarding Rhode Island's medical marijuana statute).

E.  Plaintiff and employees similarly situated to Plaintiffs are to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law.

F.  Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

G.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

H.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees (if applicable under relevant law); and

I.  Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By: */s/ Adam C. Lease*
Adam C. Lease, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

Date:  January 29, 2021